## Case No. 5,094.

### The FREMONT.

[3 Sawy. 571.] [1]

District Court, D. California. March 26, 1876.

Daniel T. Sullivan, for libellants.
Milton Andros, for claimants.

HOFFMAN, District Judge. On the twenty-fourth of January, about midnight, the barquentine Fremont, then lying at anchor in the harbor of Port Townsend, broke from her moorings and was driven by the wind against the schooner Alice, inflicting upon her considerable damage. The vessels remained in contact until late in the afternoon of the succeeding day, when they were separated by the aid of a steamer.

Both vessels were in a proper and usual place of anchorage. Their distance from each other on the evening before the accident was from one-quarter to one-half a mile. The harbor is not a dangerous one, though severe gales are sometimes experienced. The holding ground is good. Under these circumstances, the burden of proof is on the Fremont to show that the collision occurred without fault on her part.

On this point a single authority will be sufficient. In the case of The Louisiana [3 Wall. (70 U. S.) 164], the supreme court says: "The

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

collision being caused by the Louisiana drifting from her moorings, she must be liable for the damages consequent thereon, unless she can show affirmatively that the drifting was the result of inevitable accident, or a vis major, which human skill and precaution and a proper display of nautical skill could not have prevented." I have been unable to discern in the evidence produced on the part of the claimants any satisfactory grounds for considering that the collision was caused by either a vis major or inevitable accident. Undoubtedly the wind blew with some violence. But it is equally beyond doubt that the ground tackle on board the Fremont would have been abundantly sufficient to hold her if used seasonably and with proper skill.

She had but one, and that probably an insufficient, anchor down. The scope of chain paid out would seem to have been sufficient if the witnesses of the claimant are to be relied on. It appears, however, that she came to anchor on the evening of the 24th, with the intention of getting under way about midnight, when the tide would serve. There were no indications of an approaching storm. It may be presumed that the master, aware that he would have to weigh anchor in a few hours, did not pay out more chain than he thought absolutely indispensable. He was first aroused about ten minutes before the vessels came together by hearing the noise of the chain passing through the hawse pipes. He came on deck and continued to pay out chain for some minutes, but it was not until within a very short distance of the Alice and too late to prevent the collision that he succeeded in letting go his best anchor. From some expressions of the master of the Fremont subsequently to the collision it would seem that he attributed the accident to the insufficiency of his smaller anchor, of which he was previously aware. As to the admissibility of such declarations, see The Potomac, 8 Wall. [75 U. S.] 584; The Enterprise [Case No. 4,497].

On this evidence I do not, however, lay much stress. But it is plain that in the absence of any vis major, or irresistible violence of the elements, the accident must have been occasioned by the want of due care, caution and skill on the part of the Fremont. Whether that consisted in not having out an anchor of sufficient size, or in not paying out enough chain originally, in not giving her more chain when she began to drag, or in not having her best bower ready to let go at a moment's notice, it is immaterial to inquire—for it is evident that by the skilful and timely use of the appliances at his command, the master of the Fremont could have avoided the accident.

It is contended that the Alice was also in fault in not having an anchor watch set. That it would have been practicable for a seaman keeping an anchor watch on deck to have done any thing to avert or modify the effects of the collision, is by no means shown. The only expedients suggested as proper to have been adopted are hoisting the jib and sheering the vessel by shifting her helm. But the first operation, even with all hands on deck, would probably have required more time than the suddenness of the danger allowed. And whether the second would have had any beneficial effect depended upon whether the tide was running with sufficient strength to act upon the rudder—a point which the evidence leaves extremely doubtful. I am not, however, disposed to deny that if the Alice neglected any usual and proper precaution, and omitted anything which either positive law or maritime usage requires, it will be for her to show that the neglect in no degree contributed to the accident. But the proofs fail to establish any general custom or rule of navigation which requires an anchor watch to be set on small vessels when lying in a harbor. The practice of the masters seems to be various. If the weather is threatening, or the anchorage dangerous, the watch is usually set. But if there be no reason to apprehend danger, and when the crew being in port have been working all day, it is not uncommonly dispensed with. Under circumstances closely analogous, the learned judge of the Southern district of New York came to the conclusion that a schooner was not in fault in not having an anchor watch. The Clara [Case No. 2,788].

I see nothing in the case at bar to distinguish it from the numerous cases in the books where a vessel insufficiently moored drags her anchors, and collides with another vessel securely anchored and in a proper place. Unless under very exceptional circumstances the colliding vessel is in such cases uniformly held liable.

A decree in favor of libellants must be entered.